

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

ENTERED
07/25/2019

| | | |
|---|---|---|
| IN RE: | § | |
| **GUADALUPE S. GARZA** | § | **CASE NO: 16-70444** |
| Debtor | § | |
| | § | **CHAPTER 13** |
| | § | |
| **GUADALUPE S. GARZA** | § | |
| Plaintiff | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 17-7001** |
| | § | |
| **CMM ENTERPRISES, LLC D/B/A CAR** | § | |
| **MART MOTORS #2,** *et al* | § | |
| Defendants | § | |

**MEMORANDUM OPINION**
*Resolving ECF No. 1*

## I.   INTRODUCTION

One of the most fundamental bankruptcy protections afforded to debtors and creditors alike is the automatic stay.[1]  Without it, the bankruptcy process would be thrown into disarray, with creditors racing to pursue their own remedies against the debtor's property.[2]  CMM Enterprises, LLC d/b/a Car Mart Motors #2 ("*CMM*") by and through its manager Jesus Sanchez ("*Sanchez*") (collectively "*Defendants*") exercised self-help in repossessing Guadalupe S. Garza's ("*Plaintiff*, *Debtor*, or *Garza*") vehicle post-petition and refused to turn it over to Garza after repeated demands were made by her lawyers.  It is no surprise that Garza initiated the instant adversary complaint against Defendants for violations of the automatic stay and the Texas Debt Collection Act ("*TDCA*").  Based on the evidence admitted at trial that was conducted over a period of three days, briefs presented, credibility of the witnesses, and relevant case law, this

---

[1] *In re Halo Wireless, Inc.*, 684 F.3d 581, 586 (5th Cir. 2012).
[2] *See generally Matter of S.I. Acquisition, Inc.*, 817 F.2d 1142 (5th Cir. 1987).

Court finds that CMM has willfully violated the automatic stay and violated the Texas Debt Collection Act. Additionally, this Court finds that Sanchez's motion for judgment on partial findings should be granted.

## II.     FINDINGS OF FACT

This Court makes the following findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052, which incorporates FED. R. CIV. P. 52. To the extent that any finding of fact constitutes a conclusion of law, it is adopted as such. To the extent that any conclusion of law constitutes a finding of fact, it is adopted as such. This Court made certain oral findings and conclusions on the record. This Memorandum Opinion supplements those findings and conclusions. If there is an inconsistency, this Memorandum Opinion controls.

On February 3, 2016, Garza entered into a contract with CMM for the purchase of a 2012 Chevrolet Malibu ("*Malibu*") for her son Ricardo Gonzalez ("*Ricardo*").[3] The Malibu was Ricardo's sole means of transportation to work and school, and was also used to transport his girlfriend to the doctor for medical checkups because she was expecting a child.[4] Eight months later, on October 14, 2016, Garza filed a chapter 13 petition[5], commencing Case No. 16-70444.[6] Garza's chapter 13 plan listed CMM as a secured creditor.[7] Araceli Trevino ("*Trevino*")—the clerk employed by Garza's counsel and who e-filed Garza's bankruptcy petition—testified that she called Gabriele Martinez[8] ("*Martinez*") at CMM on October 14, 2016, and gave verbal notice of Garza's bankruptcy filing and requested CMM's fax number in order to fax over a paper copy

---

[3] Pl.'s Ex. 18.
[4] ECF No. 62 at 19, ¶¶ 10–12.
[5] Citations to the docket in this adversary proceeding styled *Guadalupe S. Garza v. CMM Enterprises, LLC, d/b/a Car Mart Motors #2, and Jesus Sanchez*, 17-07001 (the "*Adversary Proceeding*"), shall take the form "ECF No. —," while citations to the bankruptcy case, 16-70444 (the "*Bankruptcy Case*"), shall take the form "Bankr. ECF No. ––."
[6] Bankr. ECF No. 1.
[7] Bankr. ECF No. 2.
[8] During the events in question, Gabriel Martinez was an employee of CMM. *See* ECF No. 61 at 138, ¶¶ 17–24.

of the bankruptcy filing.[9]  Trevino testified that Martinez refused to provide CMM's fax number.[10]  Martinez testified that he did not remember receiving any phone calls relating to Garza on October 14, 2016.[11]  This Court finds Trevino's testimony credible, as Martinez's testimony was, more often than not, contradictory.[12]

Undeterred, CMM repossessed the Malibu after the bankruptcy filing on October 18, 2016.[13]  One day later, CMM mailed Garza a letter demanding full payment of the outstanding balance on the Malibu.[14]  Garza's bankruptcy lawyer, Catherine Curtis ("*Curtis*"), testified that on October 19, 2016, she spoke to Martinez and informed him of Garza's bankruptcy and the automatic stay.[15]  Curtis stated that Martinez again refused to return the Malibu.[16]  Additionally, Curtis sent three letters to CMM between October 19 and October 21, 2016, seeking turnover of the Malibu.[17]  On October 26, 2016, after informing Sanchez of CMM's violation of the automatic stay regarding Garza's Malibu, Sanchez referred Curtis to Sanchez's attorney, Jose Caso ("*Caso*").[18]  Caso offered for Garza to pick up the Malibu at the CMM lot.[19]  By this time,

---

[9] ECF No. 61 at 28–30.
[10] *Id.*  Sanchez—the owner and manager of CMM—previously testified that it was CMM's policy to flag a client's account and hold all contact and repossessions when they receive notice of bankruptcy.  ECF No. 61 at 234; Pl.'s Ex. 15 at 26–28.  However, CMM's policy was neither written down nor memorialized.  *See* ECF No. 61 at 218–19.
[11] ECF No. 62 at 278.
[12] *Compare* ECF No. 62 at 283 (answering in the affirmative that CMM had a written policy regarding bankruptcy) *with id.* at 284 (answering the same question in the negative); *compare id.* at 265 (answering that the only correspondence he received on October 19, 2016 was a fax of Garza's bankruptcy) *with id.* at 280 (noting that Martinez was called three or four times on October 19, 2016 regarding the Malibu); *compare id.* at 273 (stating the CMM had a computer system for tracking communications with borrowers) *with id.* at 275 (noting that there were no entries for communications regarding Garza in October 2016).
[13] ECF No. 48 at ¶ 8; Defs. Ex. 15; ECF No. 62 at 260.
[14] Pl.'s Ex. 10.
[15] Pl.'s Exs. 6, 7, 15.
[16] ECF No. 61 at 104, ¶ 13.
[17] *Id.*; Pl.'s Ex. 8.
[18] ECF No. 61 at 106–09; ECF No. 62 at 46, ¶¶ 7–16.
[19] ECF No. 61 at 109.

however, Garza had already spent $1,000 to secure new transportation, and thus declined CMM's offer.[20]

On January 5, 2017, Garza initiated the instant Adversary Proceeding against Defendants.[21] This Court held trial over three days. After Garza put on her case in chief and rested, Sanchez motioned this Court for a directed verdict as to himself individually.[22] Because this was a matter of first impression, the Court requested briefing on the issue of whether Sanchez could be held personally liable for the actions of CMM.[23] After the timely filing of their briefs and replies,[24] this matter is now ripe for consideration, and the Court now issues its Memorandum Opinion.

### III. CONCLUSIONS OF LAW

#### A. Jurisdiction, Venue, and this Court's Constitutional Authority to Enter a Final Order

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334 and now exercises its jurisdiction in accordance with Southern District of Texas General Order 2012–6.[25] While bankruptcy judges can issue final orders for core proceedings, absent consent, they can only issue reports and recommendations for non-core proceedings.[26] Here Garza consented to the entry of final orders and judgments by this Court,[27] Defendants, however, did not consent.[28]

This court determines that pursuant to 28 U.S.C. § 157(b)(2), this Adversary Proceeding contains core matters, as it primarily involves enforcement of the Court's automatic stay

---

[20] *Id.* at 110, 126; ECF No. 62 at 71.
[21] ECF No. 1.
[22] ECF No. 62 at 235.
[23] *Id.* at 250.
[24] *See* ECF Nos. 67, 68, 69.
[25] *In re*: *Order of Reference to Bankruptcy Judges*, Gen. Order 2012–6 (S.D. Tex. May 24, 2012).
[26] 28 U.S.C. § 157(b)(1)–(c).
[27] *See* ECF No. 1 at 2–3.
[28] *See* ECF No. 13 at 2–3.

injunction through the enforcement of this Court's own prior order for relief.[29] To the extent that non-core claims are involved, this court finds that resolution of such claims are inextricably intertwined with resolution of the core claim regarding enforcement of the bankruptcy's automatic stay injunction.[30] As such, this Court may enter final orders and judgments. However, should the District Court find that the Bankruptcy Court did not have authority to enter final orders and judgments, this Court requests that the District Court convert this Memorandum Opinion into a Report and Recommendation. Finally, venue is governed by 28 U.S.C. §§ 1408, 1409. Here, venue is proper because the Court presided over the underlying Bankruptcy Case.[31]

### B. Sanchez's Motion for Directed Verdict Is Appropriate Under Motion for Judgment on Partial Findings

Federal Rule of Civil Procedure 52(c), made applicable pursuant to Bankruptcy Rule 7052, provides in pertinent part:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue.[32]

A judgment made pursuant to Rule 52(c) operates as a *decision on the merits* in favor of the moving party and should be granted where (1) the plaintiff fails to make out a prima facie case, or (2) despite the existence of a prima facie case, the court determines by a preponderance

---

[29] *See* 11 U.S.C. § 301(b) (commencing a voluntary case under a chapter of title 11 constitutes order for relief).
[30] *See In re Spillman Development Group, Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (holding that creditor's state contract–law claims were inextricably intertwined with the interpretation of a right created by federal bankruptcy law); *Honigman, Miller, Schwartz & Cohn v. Weitzman (In re DeLorean Motor Co.)*, 155 B.R. 521, 525 (9th Cir. BAP 1993) (holding that an otherwise non–core state law claim was inextricably tied to the determination of an administrative claim against the estate and similarly tied to questions concerning the proper administration of the estate); *Maitland v. Mitchell (In re Harris Pine Mills)*, 44 F.3d 1431, 1438 (9th Cir. 1995) (citing *Honigman, Miller, Schwartz & Cohn* with approval); *see also CDX Liquidating Trust v. Venrock Assoc.*, No. 04–7236, 2005 WL 3953895, at *2 (N.D. Ill. Aug. 10, 2005) (holding that where non–core claims were inextricably intertwined with core claims, the non–core claims should be treated as core claims); *Electric Machinery Enterprises, Inc. v. Hunt Construction Group, Inc. (In re Electric Machinery Enterprises, Inc.)*, 416 B.R. 801, 866–67 (Bankr. M.D. Fla. 2009) (adopting inextricably intertwined approach).
[31] Bankr. ECF No. 1.
[32] FED. R. CIV. P. 52(c); FED. R. BANKR. P. 7052.

of the evidence that judgment should be entered against the plaintiff.[33] Unlike a motion for summary judgment or directed verdict, the court is not required under Rule 52(c) to draw special inferences in the nonmovant's favor, or consider the evidence in the light most favorable to the nonmoving party.[34] Usually, a Rule 52(c) motion is made by a defendant at the close of plaintiff's case, and is granted when the plaintiff has failed to carry their burden of establishing a prima facie case.[35] If the court grants the motion, it must support its judgment with findings of fact and conclusions of law.[36] Its factual findings are subject to appellate review under the "clearly erroneous" standard.[37]

At the close of Garza's case, counsel for Sanchez moved for a "directed verdict" against Sanchez individually.[38] Because this Adversary Proceeding was not conducted before a jury trial, this Court will treat such motion as a motion for judgment on partial findings under Rule 52(c), rather than a motion for judgment as a matter of law under Rule 50(a).[39] Turning to the merits, Sanchez argues that the Court should grant his motion because Garza failed to bring any evidence showing that Sanchez acted outside his capacity as representative of CMM.[40] Garza responds that the Bankruptcy Code does not allow Sanchez to hide behind a corporation and avoid liability for violating the automatic stay.[41] Garza argues that Sanchez is liable because it is "well settled law that when corporate officers directly participate in or authorize the commission of a [tort], even if the [tort] is done on behalf of the corporation, they may be personally

---

[33] *Regency Holdings* (*Cayman*)*, Inc. v. The Microcap Fund, Inc.* (*In re Regency Holdings* (*Cayman*)*, Inc.*), 216 B.R. 371, 375 (Bankr. S.D.N.Y. 1998) (emphasis added).
[34] *Id.* at 371.
[35] *LaMarca v. United States*, 31 F. Supp. 2d 110, 123 (E.D.N.Y. 1998).
[36] FED. R. CIV. P. 52(c).
[37] *Geddes v. Northwest Missouri State University*, 49 F.3d 426, 429 n.7 (8th Cir. 1995); *Price v. U.S. Navy*, 39 F.3d 1011, 1021 (9th Cir. 1994); *In re Regency Holdings* (*Cayman*)*, Inc.*, 216 B.R. at 375.
[38] ECF No. 62 at 235.
[39] *See* FED. R. CIV. P. 50(a) ("If a party has been fully heard on an issue during a jury trial . . . .").
[40] *See* ECF No. 62 at 235, 236.
[41] *Id.* at 242.

liable."[42]  To defeat Sanchez's motion for judgment on partial findings, Garza will need to carry her burden of establishing a prima facie case that Sanchez is not afforded the legal protections of the corporate structure.[43]

The bedrock principle of corporate law is that an individual can incorporate a business and thereby normally shield himself from personal liability for the corporation's obligations.[44] Under Texas law, the same protections afforded to corporations are also afforded to limited liability companies ("*LLC*").[45]  However, the legal protections of such organization is to be disregarded when the organization has been used as part of a unfair device to achieve an inequitable result.[46]  Termed "piercing the corporate veil,"[47] courts are to disregard the corporation fiction under several circumstances—one being the alter ego remedy.[48]  The alter ego remedy applies when there is such an identity between a corporation and an individual that all separateness between the parties has ceased and a failure to disregard the corporate form would be unfair or unjust.[49]  Such individual who has misused the corporate form will be personally liable for the corporation's obligations.[50]  An alter ego allegation is shown from the total dealings of the corporation and the individual, including the degree to which corporate formalities have been followed, the degree of which corporate and individual property has been

---

[42] *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1312 (5th Cir. 1991); ECF No. 65 at 4.
[43] *Roylex, Inc. v. Langson Bros. Construction Co., Inc.*, 585 S.W.2d 768, 771 (Tex. Civ. App.–Houston [1st Dist.] 1979, writ ref'd n.r.e); *LaMarca v. United States*, 31 F. Supp. 2d 110, 123 (E.D.N.Y. 1998).
[44] *Willis v. Donnelly*, 199 S.W.3d 262, 271 (Tex. 2006).
[45] *See* TEX. BUS. ORGS. CODE § 101.114 ("[A] member . . . is not liable for a debt, obligation, or liability of a limited liability company . . . .").
[46] *Bell Oil & Gas Co. v. Allied Chemical Corp.*, 431 S.W.2d 336, 340 (Tex. 1968).
[47] The principles of piercing the corporate veil apply to LLC's as well.  *McCarthy v. Wani Venture, A.S.*, 251 S.W.3d 573, 590 (Tex.App.–Houston [1st Dist.] 2007, pet. denied).
[48] *Matter of S.I. Acquisition, Inc.*, 817 F.2d at 1152.  It is proper to refer to an alter ego claim as a remedy rather than a cause of action under Texas law because the fact that a corporation may be an alter ego of a control entity does not create a substantive cause of action against either the corporation or control entity.  *See Gulf Reduction Corp. v. Boyles Galvanizing & Plating Co.*, 456 S.W.2d 476, 480 (Tex.Civ.App.–Fort Worth 1970, no writ).
[49] *Matter of S.I. Acquisition, Inc.*, 817 F.2d at 1152.
[50] *Id.*

kept separate, the amount of financial interest, ownership and control the individual maintains over the corporation, and whether the corporation has been used for personal purposes.[51]

Here, Garza failed to show that Sanchez is the alter-ego of CMM. Garza did not plead, nor did she submit any evidence or testimony that Sanchez kept his and CMM's property together, that Sanchez was acting individually instead of through CMM, that Sanchez was using CMM for personal purposes, or that Sanchez and CMM are considered a single entity. While Sanchez did testify that it was CMM's policy to flag a client's account and hold off on all contact when they receive notice of a bankruptcy—and this policy was neither written down nor memorialized—this alone does not constitute enough to disregard the corporate fiction.[52] During trial, the evidence and witness testimony demonstrated that CMM sold the Malibu to Garza, that CMM repossessed the Malibu, and that Sanchez—acting as representative of CMM—sought legal counsel on behalf of CMM before returning the Malibu to Garza.[53] Because Garza did not plead, nor was there any evidence or testimony demonstrating that Sanchez and CMM disregarded the corporate form, this Court will not make such a finding here.[54]

Lastly, Garza argues that Texas law does not protect members of a limited liability company from being held liable for their *own* allegedly tortious or fraudulent actions.[55] In such a case, no finding of alter-ego is necessary to pierce the corporate veil and impose personal liability on corporate officers.[56] While Garza correctly cited the law, the problem arises in the fact that not only did Garza fail to state a claim involving allegedly tortious or fraudulent actions,

---

[51] *Id.*
[52] *See* ECF No. 61 at 218–19; *Matter of S.I. Acquisition, Inc.*, 817 F.2d at 1152.
[53] *See* ECF No. 62 at 241.
[54] *See id.* at 237 ("Well, what evidence demonstrates that he acted outside his capacity as corporate representative? Point me to the evidence.").
[55] *In re White–Robinson*, 777 F.3d 792, 799 (5th Cir. 2015) (emphasis added); *see Sanchez v. Mulvaney*, 274 S.W.3d 708, 712 (Tex.App.–San Antonio 2008).
[56] *Kingston v. Helm*, 82 S.W.3d 755, 761 (Tex.App.–Corpus Christi 2002, pet. denied).

but Garza failed to present any evidence that Sanchez committed any tortious or fraudulent act. Indeed, Garza only presented two statutory claims before this Court: violation of the automatic stay under section 362, and violation of the TDCA. Because Garza failed to plead tortious or fraudulent conduct, and failed to present evidence of tortious or fraudulent conduct, Garza may not argue that personal liability attaches to Sanchez without piercing the corporate veil.

While Garza is correct in that section 362(a) applies to all entities, including limited liability companies,[57] Garza failed to carry her burden in establishing a prima facie case that Sanchez's conduct constituted a disregard for the corporate fiction.[58] Accordingly, this Court grants Sanchez's motion for judgment on partial findings under Rule 52(c). Now, this Court turns to CMM and the alleged violations of section 362 and TDCA.

### C. Defendant CMM Violated The Automatic Stay

The automatic stay provision of section 362(a)[59] is a key component of federal bankruptcy law. The stay prohibits a wide range of actions taken by creditors against a debtor.[60] The legislative history of section 362(a) underscores its importance:

> The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

---

[57] *See* 11 U.S.C. § 101(9)(A)(ii); 2 COLLIER ON BANKRUPTCY ¶ 101.09 (Alan N. Resnick & Henry J. Sommer eds., 16th ed.) (" . . . thus making the limited liability company fall within the [Bankruptcy] Code's definition of 'corporation.'").

[58] *See supra* at 6–8; ECF No. 62 at 241 ("But what evidence on the record . . . would point me to support your position that Mr. Sanchez acted outside the scope of the LLC, in his capacity of the LLC? And there's nothing in the complaint that would, that has plead that Mr. Sanchez acted outside the scope of the LLC . . . the debtor testified, and the evidence points to [CMM] selling the vehicle, not Mr. Sanchez.").

[59] 11 U.S.C. § 362(a) states that "[e]xcept as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title . . . operates as a stay, applicable to all entities, of, *inter alia*: (3) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate; (4) any act to create, perfect, or enforce any lien against property of the estate; and (6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title."

[60] *See generally* 11 U.S.C. § 362.

The automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly [reorganization or] liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.[61]

The automatic stay thus ensures a respite for the debtor and imposes a moratorium on collection efforts regarding property of the estate.[62] Property of the estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case."[63] Here, CMM violated section 362(a)(3) by taking property of the estate without this Court's approval.[64] It is uncontroverted that Garza's Malibu was purchased on February 3, 2016[65] and became property of Garza's estate on October 14, 2016 when Garza filed her chapter 13 bankruptcy petition.[66] CMM repossessed Garza's Malibu four days after Garza filed her bankruptcy petition,[67] which constituted a taking of property of the estate under section 362(a)(3). Thus, CMM violated the automatic stay provisions of section 362(a)(3). In order for Garza to recover damages, Garza must meet the requirements of section 362(k).

### D. CMM Willfully Violated the Automatic Stay Under Section 362(k)

Section 362(k) allows an individual who was injured by a willful stay violation the ability to recover actual damages, including costs and attorneys' fees, and in certain circumstances, punitive damages.[68] There are three elements to a 362(k) claim: (1) the defendant must have known of the existence of the stay; (2) the defendant's acts must have been intentional; and (3)

---

[61] H.R. REP. NO. 95–595 (1978); *see also* S. REP. NO. 989 (1978).
[62] *Matter of S.I. Acquisition, Inc.*, 817 F.2d at 1147.
[63] 11 U.S.C. § 541 (emphasis added); *see Thompson v. General Motors Acceptance Corp., LLC*, 566 F.3d 699, 701–02 (7th Cir. 2009) (there is no debate that a debtor has an equitable interest in their vehicle, and "as such, it is property of [their] bankruptcy estate.").
[64] *See* 11 U.S.C. § 362(a)(3).
[65] Pl.'s Ex. 18.
[66] Bankr. ECF No. 1; *see* 11 U.S.C. § 541(a)(1).
[67] ECF No. 48 at ¶ 8.
[68] 11 U.S.C. § 362(k); *see Pettitt v. Baker*, 876 F.2d 456, 457 (5th Cir. 1989).

these acts must have violated the stay.[69]

### a. CMM Had Actual Notice of Garza's Bankruptcy

When Trevino called Martinez and gave CMM verbal notice of Garza's bankruptcy filing on October 14, 2016, CMM was placed on notice of Garza's bankruptcy filing.[70] The subsequent repossession of the Malibu on October 18, 2016 was in total disregard of this Court's order for relief. To further aggravate the situation, Curtis' repeated written demands upon CMM for return of the Malibu after it was repossessed fell upon deaf ears.[71] This Court finds that CMM not only knew of the existence of the automatic stay, but intentionally disregarded this Court's order and therefore the first element is more than satisfied.

### b. CMM's Acts Must Have Been Intentional

To satisfy the second element, the Court does not need to find that CMM had a specific intent to violate the automatic stay, but only that CMM's actions violating the automatic stay were intentional.[72] CMM's good faith belief that it had a right to the property is not a relevant factor as to whether the act was willful or whether compensation must be awarded.[73] CMM admitted that they repossessed Garza's Malibu on October 18, 2016.[74] As found above, the Court finds that CMM's actions were intentional and that the second element is satisfied.

### c. CMM's Acts Must Have Violated the Stay

CMM was placed on notice of Garza's bankruptcy filing yet chose to deliberately proceed with repossessing Garza's Malibu. From the time of repossession on October 18, 2016,

---

[69] *Young v. Repine* (*In re Repine*), 536 F.3d 512, 519 (5th Cir. 2008).
[70] ECF No. 61 at 28–30.
[71] Pl.'s Exs. 6, 7, 15.
[72] *Mark Brown v. Vance Chestnut* (*In re Chestnut*), 422 F.3d 298, 302 (5th Cir. 2005).
[73] *Id.*
[74] ECF No. 48 at ¶ 8; Defs. Ex. 15; ECF No. 62 at 260.

it took CMM eight days to finally offer to return Garza's Malibu.[75] CMM's repossession of Garza's Malibu forced Garza to spend an additional $1,000 to find transportation.[76] CMM failed to seek the Court's permission before repossessing Garza's Malibu, and had no legal right to disregard this Court's Order. CMM's failure to seek Court permission before repossessing property of the estate resulted in a violation of the automatic stay.[77] CMM was required to return Garza's vehicle and seek protection within the framework of the Bankruptcy Code rather than through "the nonbankruptcy remedy of possession."[78] Thus, because CMM improperly took property of the estate in violation of the automatic stay, the third element is satisfied. With all three elements of 362(k) being satisfied, this Court turns to the calculation of damages.

### E. Calculation of Damages for CMM's Violation of the Automatic Stay

Section 362(k)(1) mandates that one injured by a willful stay violation "shall recover" actual damages, costs and attorneys' fees, and in certain circumstances, punitive damages to one injured by a willful violation of the stay.[79] The words "shall recover" indicate that Congress intended that the award of actual damages, costs, and attorneys' fees be mandatory upon a finding of a willful violation of the stay.[80] Notwithstanding the mandatory language of section 362(k), Garza has the burden of proving actual damages,[81] and such damages "must be proven

---

[75] ECF No. 48 at ¶8; ECF No. 61 at 106–09.
[76] ECF No. 61 at 110, 126; ECF No. 62 at 71.
[77] *See Mark Brown v. Vance Chestnut* (*In re Chestnut*), 422 F.3d 298 (5th Cir. 2005) (finding that a creditor should seek court permission before taking property that might be property of debtor's estate); *In re Levenstein*, 371 B.R. 45 (Bankr. S.D.N.Y. 2007) (creditor violated automatic stay by foreclosing on a house titled in the debtor's spouse's name without seeking court permission); *In re Campbell*, 361 B.R. 831 (Bankr. S.D. Tex. 2007) (creditor violated automatic stay by collecting pre-petition property taxes from post-petition payments).
[78] *United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983).
[79] 11 U.S.C. § 362(k)(1).
[80] *Lucille L. Clayton v. Old Kent Mortgage Co.*, (*In re Clayton*), No. 08–37108, No. 09–03024, 2010 WL 4482810, at *2 (Bankr. S.D. Tex. Oct. 29, 2010).
[81] *Collier v. Hill* (*In re Collier*), 410 B.R. 464, 476 (Bankr. E.D. Tex. 2009) (citing *In re All–Trac Transp., Inc.*, 223 F. App'x. 299, 302 (5th Cir. 2006)).

with reasonable certainty and may not be speculative or based on conjecture."[82]

   a. Actual Damages

If Garza had not commenced her adversary proceeding, CMM would never have been held accountable for its violation of the automatic stay.[83] Here, Garza's uncontroverted testimony was that because she lost the Malibu she was forced to spend $1,000 to secure a new vehicle for Ricardo.[84] While all that is before this Court is her testimony, this Court finds Garza's testimony credible. Thus, the Court shall award Garza the sum of $1,000.

   b. Emotional Injuries

The Fifth Circuit has not yet adopted a precise standard for awarding emotional distress damages under section 362(k). However, the Fifth Circuit has stated that at a minimum, one would be required to set forth specific information concerning damages caused by one's emotional distress rather than relying on generalized assertions.[85] Anger, frustration, and general hurt feelings are part of life, and are not the types of emotional harm that could support an award of damages.[86]

Lower courts have awarded emotional distress damages where the plaintiff has shown a specific injury and proved that the injury was caused by the automatic stay violation.[87] In *Collier*, the Court awarded emotional distress damages when the party presented evidence of "a specific discernable injury to the claimant's emotional state, proven with evidence regarding the nature and extent of the harm."[88] Similarly, the *Gervin* court awarded emotional distress damages when "a reasonable relationship [was demonstrated] between the violation of the

---

[82] *Id.* (citing *Archer v. Macomb Cnty Bank*, 853 F.2d 497, 499–500 (6th Cir. 1988)).
[83] *See McClure v. Bank of America* (*In re McClure*), 430 B.R. 358, 363 (Bankr. N.D. Tex. 2010).
[84] ECF No. 61 at 110, 126; ECF No. 62 at 71, 124.
[85] *In re Repine*, 536 F.3d at 521–22.
[86] *James Bradley Collier v. Paul Hill* (*In re Collier*), 410 B.R. 464, 477 (Bankr. E.D. Tex. 2009).
[87] *See id.*
[88] *Id.* (citing *Hitt v. Connell*, 301 F.3d 240, 250–51 (5th Cir. 2002)).

discharge injunction and the emotional injuries."[89] But the *McClure* court refused to award emotional distress damages when the party could establish "at most a tenuous, correlative relationship" between the party's emotional distress and the violation.[90]

During trial, Garza testified that CMM's violation of the automatic stay increased her stress levels and aggravated her condition, and caused general panic attacks.[91] Garza explained that she was diagnosed in March of 2017 with panic attacks.[92] However, Garza has failed to establish a causal relationship between the automatic stay violation and her panic attacks. There is no doubt that Garza experienced stress during the events surrounding the repossession of the Malibu. She was in financial jeopardy which precipitated the bankruptcy filing, and had to confront troubling legal issues concerning the Malibu. But this Court must sift through the evidence and determine whether the stress was caused by Garza's financial predicament or by the automatic stay violations or something else; and whether the stress actually aggravated Garza's medical condition.

Based on the evidence presented, this Court determines that Garza has failed to establish that the automatic stay violation either caused or exacerbated her medical condition. Garza has testified that her panic attacks started roughly in 1998, with the birth of her son.[93] In her testimony, Garza simply provided dates, and a brief description of her general health problems. Such testimony does not establish any kind of causation between the automatic stay violation and her panic attacks. Though this Court recognizes that Garza did suffer hardship as a result of the stay violation, Garza has not met her burden of proof in establishing that CMM's violation of the

---

[89] *In re Gervin*, 337 B.R. 854, 860 (Bankr. W.D. Tex. 2005) (citing *In re Torres*, 309 B.R. 643, 649–50 (1st Cir. B.A.P. 2004)).
[90] *McClure v. Bank of America* (*In re McClure*), 420 B.R. 655, 663 (Bankr. N.D. Tex. 2009).
[91] *See* ECF No. 62, pp. 27, 36, 40, 76–78, 100–01, 112, 115, 117, 112.
[92] *Id.* at 122.
[93] *Id.* at 112.

automatic stay caused or exacerbated her medical condition. Accordingly, this Court denies Garza's request for emotional distress damages.

      c. Punitive Damages

In addition to awarding actual damages under section 362(k), the Court may award punitive damages for willful violation of an automatic stay "in appropriate circumstances,"[94] which the Fifth Circuit has held requires "egregious conduct."[95] Egregious conduct is found when a creditor's actions are reckless and in arrogant defiance of the bankruptcy stay.[96] Punitive damages are a proper deterrent to entities who willfully violate the automatic stay, even if the actual damages are minimal.[97] In *In re Lile*, the bankruptcy court awarded punitive damages when the IRS, with full knowledge that the debtor had filed a chapter 11 petition, refused to adhere to the requirements of the automatic stay.[98]

Because of Trevino's call to Martinez informing CMM of Garza's bankruptcy, CMM had previous knowledge of Garza's pending bankruptcy. This should have led CMM to make reasonable inquiries into the bankruptcy filing before seizing Garza's Malibu. CMM did not do this, and instead knowingly and intentionally chose to disregard the stay by seizing the Malibu. Therefore, CMM assumed the risk that its action would be found wrongful. Even if CMM had a valid reason for seizing the Malibu, it violated the bankruptcy laws by failing to obtain relief from the automatic stay pursuant to section 362(d) before seizing the property. The retention of

---

[94] 11 U.S.C. § 362(k)(1).
[95] *Monge v. Rojas* (*Matter of Monge*), 826 F.3d 250, 256 (5th Cir. 2016) (quoting *In re Repine*, 536 F.3d at 521).
[96] *In re Lile*, 103 B.R. 830, 841 (Bankr. S.D. Tex. 1989) (awarding punitive damages against the IRS when agent of IRS "acted with reckless disregard and in 'arrogant defiance' of a federally protected right" against debtor); *see United States of America v. Lile* (*In re Lile*), 161 B.R. 788 (S.D. Tex. 1993) (affirming bankruptcy court's finding of punitive damages against IRS for actions that were reckless and in arrogant defiance of the bankruptcy stay); *In re Repine*, 536 F.3d at 521 ("Here, we find [creditor's] violation of the bankruptcy stay to be no less 'reckless' or 'arrogant' than was the violator's in *Lile*, which justified a punitive damages award.").
[97] *In re Lile*, 103 B.R. at 841.
[98] *Id.*

Garza's Malibu with full knowledge of the bankruptcy filing is in itself a continuing violation of the stay and is grounds for damages.[99]

As such, an award of punitive damages is appropriate in this case. CMM had full knowledge of Garza's chapter 13 petition yet refused to adhere itself to the requirements of the automatic stay and this Court's order for relief. CMM acted with reckless disregard and in arrogant defiance of a federally protected right, and caused unnecessary expense to Garza's estate which could have been avoided if CMM first sought relief from the stay. Thus, the Court finds that punitive damages in the amount of $6,000, representing the value of the Malibu,[100] plus an additional $100 per day for each day that the sums awarded by the bankruptcy court are not paid, is an appropriate sanction against CMM.

### d. Attorneys' Fees, Costs, and Expenses

As the final component of actual damages contemplated by section 362(k), Garza requests a recovery of attorney's fees in the amount of $80,862.50 and reimbursement of expenses in the amount of $4,530.11 for Plaintiff's counsel.[101] Although section 362(k) "does not limit the amount of attorneys' fees and costs to be awarded under that section, courts have determined that such an award must be 'reasonable and necessary,' and that courts should 'closely scrutinize the fees requested by attorneys for unnecessary and excessive charges.'"[102]

The Court will award reasonable attorney's fees and costs. Therefore, Plaintiff's counsel must file a fee application with the Court within 14 days of the issuance of this Order.

### F. CMM Violated the Texas Debt Collection Act

---

[99] *In re Lile*, 103 B.R. at 837.
[100] Bankr. ECF No. 28.
[101] Pl.'s Exs. 20, 22.
[102] *In re Parry*, 328 B.R. 655, 659 (Bankr. E.D.N.Y. 2005); *Harris v. Memorial Hosp.* (*In re Harris*), 374 B.R. 611, 617 (Bankr. N.D. Ohio 2007).

Garza asserts that Defendants violated the TDCA.[103] Specifically, Garza claims a violation of section 392.301(a)(8), and resulting damages under section 392.403.[104] The relevant provisions state:

Section 392.301(a)(8). Threats or Coercion

>  (a) In debt collection, a debt collector may not use threats, coercion, or attempts to coerce that employ any of the following practices: . . .
>
>  (8) threatening to take an action prohibited by law.[105]

Garza argues that CMM violated section 392.301(a)(8) of the TDCA by threatening to take an action prohibited by law—specifically by threatening to sell Garza's Malibu absent any right to do so.[106] Section 392.301(a)(8) prohibits threats "to take an action prohibited by law;" whether the threat is "egregious" is immaterial.[107] Not only did CMM threaten to sell Garza's Malibu,[108] and thus to "take an action," but CMM took action that was prohibited by law, namely violating the automatic stay.[109] As such, this Court holds that CMM is liable under section 392.301(a)(8) of the TDCA.

### G. Calculation of Damages for CMM's Violation of the TDCA

The relevant provisions of the civil remedies part of the TDCA states:

Section 392.403. Civil Remedies

>  (a) A person may sue for:
>
>  (1) injunctive relief to prevent or restrain a violation of this chapter; and
>
>  (2) actual damages sustained as a result of a violation of this chapter.

---

[103] *See* ECF No. 1.
[104] *Id.*
[105] TEX. FIN. CODE § 392.301(a)(8).
[106] ECF No. 1.
[107] *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463, 478 (5th Cir. 2015).
[108] *See supra* at 3.
[109] *Id.* at 9–10.

> (b) A person who successfully maintains an action under Subsection (a) is entitled to attorney's fees reasonably related to the amount of work performed and costs.[110]

. . .

The TDCA allows Garza to sue for actual damages, injunctive relief, and attorney's fees and also awards statutory damages of $100 for certain violations.[111] However, the statutory damages are inapplicable in this case.

### a. Actual Damages and Attorneys' Fees

The sole purpose of actual damages is compensation.[112] Garza seeks actual damages and attorneys' fees pursuant to 392.403 of the TDCA.[113] Here, Garza's only evidence of actual damages is the $1,000 she spent on acquiring new transportation—which this Court awarded Garza under section 362(k). Therefore, under section 392.403, the Court awards Garza actual damages in the amount of $0. The Court will award Plaintiff's counsel reasonable attorney's fees and costs. Plaintiff's counsel must file a fee application with the Court within 14 days of the issuance of this Order. Lastly, this Court will review whether damages for mental anguish are appropriate.

### b. Mental Anguish

Damages for mental anguish are recoverable under the TDCA.[114] To show entitlement to mental anguish damages, plaintiff must put on evidence showing the nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily routine, or show a high degree of mental pain and distress that is more than mere worry, anxiety,

---

[110] TEX. FIN. CODE § 392.403.
[111] *Id.*
[112] *Texas Pacific Coal & Oil Co. v. Stuard*, 7 S.W.2d 878, 881 (Tex.Civ.App.–Eastland 1928, writ ref'd).
[113] *See* ECF No. 1.
[114] *McCaig*, 788 F.3d at 482.

vexation, embarrassment, or anger.[115] A plaintiff is not required to show that their mental anguish resulted in physical symptoms.[116] Damages for mental anguish may be proven by the claimant's own testimony.[117]

Here, Garza has failed to put on evidence that establishes a substantial disruption in her daily routine, and has failed to put on evidence showing a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger.[118] As such, this Court denies Garza's request for mental anguish damages under TDCA.

### IV. CONCLUSION

Pending before this Court is Garza's Complaint against Defendants for violations of the automatic stay and the Texas Debt Collection Act. For the reasons stated above:

1. Defendant Sanchez's motion for judgment on partial findings is granted as to all causes of action set forth in Plaintiff's complaint and operates as a decision on the merits.

2. As for CMM Enterprises, LLC:

   a. Count I, CMM Enterprises, LLC willfully violated the automatic stay under 11 U.S.C. § 362(a). Under 11 U.S.C. § 362(k), Garza is awarded actual damages of $1,000, and punitive damages of $6,000 plus an additional $100 per day for each day that the sums awarded by the bankruptcy court are not paid. Plaintiff's counsel will be awarded reasonable and necessary attorney's fees and costs. Plaintiff's counsel must file an application for attorneys' fees and costs within fourteen (14) days from the entry of this Court's order.

   b. Count II, CMM Enterprises, LLC violated the Texas Debt Collection Act under Tex. Fin. Code § 392.301(a)(8). Under Tex. Fin. Code § 392.403, Garza is awarded actual damages of $0. Plaintiff's counsel will be awarded reasonable and necessary attorney's fees and costs. Plaintiff's counsel must file an application for attorneys' fees and costs within fourteen (14) days from the entry of this Court's order.

An Order consistent with this Memorandum Opinion will be entered on the docket

---

[115] *Id.*
[116] *Id.*
[117] *Id.*
[118] *See supra* at 13–15.

simultaneously herewith.

SIGNED 07/25/2019.

                                                      Eduardo V. Rodriguez
                                              United States Bankruptcy Judge